Evan C. Nelson, Esq. (SBN 172957)
LAW OFFICE OF EVAN C. NELSON
1261 Locust Street, No. 191
Walnut Creek, CA  94596-4509
Telephone:     (925) 247-8992
*Attorneys for Plaintiff Katherine M. Dubro,*
*Through Michael Dubro, Next Friend and/or*
*Conservator of Person for Katherine M. Dubro*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| KATHERINE M. DUBRO, through MICHAEL DUBRO, NEXT FRIEND and/or CONSERVATOR OF PERSON FOR KATHERINE M. DUBRO, <br><br> Plaintiff <br><br> v. <br><br> DENNIS DUBRO; MARK CEDERBORG; GEORGE MCNITT; KRISTEN BONEY; LEGAL ASSISTANCE FOR SENIORS, INC.; LEO FERNANDEZ BAUTISTA, individually and dba BAUTISTA, BAUTISTA & ASSOCIATES; LIVHOME INC. dba LIVHOME OF SAN JOSE; L AND C CARE PROVIDERS, INC.; KELLIE ANN HAYES, individually and dba LUCKY FIDUCIARY SERVICES; MICHELLE DHANAK, M.D.; ELDERCONSULT FOUNDATION; SHARON BALDOZA; GUIDED HEALTHCARE, A NURSING CORPORATION; VITAS HEALTHCARE CORPORATION OF CALIFORNIA; ACE HOME HEALTH CARE & HOSPICE, INC.; STEVEN CURRAN, M.D.; DANIEL LEAHY; DOUGLAS HOUSMAN AND DOES 1-50. <br><br> Defendants. | Case No: 4:22-cv-2975 <br><br> COMPLAINT FOR DAMAGES <br><br> DEMAND FOR JURY TRIAL <br><br> 1.  **§ 1983 – Violation of Procedural Due Process** <br> 2.  **§ 1983 – Violation of Substantive Due Process** <br> 3.  **§ 1983 – Fourteenth Amendment – Due Process – State-Created Danger** <br> 4.  **§ 1983 – Fourteenth Amendment – Due Process – Parent/Child Relations** <br> 5.  **§ 1983 – Fourteenth Amendment – Due Process – Fabricated Evidence** <br> 6.  **§ 1983 – Fourteenth Amendment – Due Process – Suppressed Evidence** <br> 7.  **§ 1983 – First Amendment – Chilling Citizen's Right to Access Courts** <br> 8.  **Retaliation in Violation of ADA, Title IV** <br> 9.  **Elder Abuse for Monetary Gain** <br> 10. **Breach of Fiduciary Duties** <br> 11. **Professional Negligence** <br> 12. **B&P § 17200 Unfair Business Practices** |

Plaintiff alleges the following Complaint for Damages:

## INTRODUCTION

Michael Dubro brings these claims on his mother's behalf through standing as her "next-friend" and/or as her representative (conservator of her person) under Rule 17.

Defendants engaged in a conspiracy to illegitimately take control of Plaintiff's person and assets, and as co-conspirators using the state court processes became "state actors" liable for violations of Plaintiff's federal civil rights under 42 U.S.C. § 1983. Defendants deprived Plaintiff, who has the known disability of dementia, of her procedural due process rights (i) to be present during the trial, (ii) to have legal counsel represent her and advocate for her rights and expressed wishes, and (iii) to have a jury trial as provided by statute. After depriving her of her procedural due process rights, Defendants used the court processes, including the invalid bench trial by a judge with undisclosed conflicts of interest who was participating in the conspiracy, to void Plaintiff's advance planning documents and to strip Plaintiff of all her liberties, even depriving her of her right to have her personal care and financial affairs managed by her children, whom she had expressly selected for such roles. The invalidly forced conservatorship then subjected Plaintiff to numerous reasonably foreseeable abuses culminating in an attempt to commit passive euthanasia by depriving Plaintiff of nutrition and hydration, in addition to drugging, isolation from her children, confinement to her bed, and otherwise neglecting her physical and psychosocial needs.

During the period following the trial, while Plaintiff was still denied legal counsel, Defendants used court processes again to take control over Plaintiff's Trust, in violation of the express terms of her Trust, which designated Plaintiff's own choice for trustee and successor trustee. Defendants gave control of Plaintiff's Trust, containing her scrupulously saved and carefully preserved assets, to private fiduciaries whom Plaintiff did not choose and whom she would never have entrusted with her substantial assets.

Michael Dubro was appointed as conservator for Plaintiff on August 11, 2020 and saved her from the abuses and premature death that were the reasonably foreseeable consequence of the conspiracy. (See Exhibit A.) When claims were filed in state court seeking redress and to oppose continuing violations of Plaintiff's ADA rights, Defendants retaliated in violation of Title IV of the ADA and the First Amendment.

The state court judges and officers are immune from suit and are not named or pursued here. As co-conspirators who used the court processes to carry out a conspiracy to violate Plaintiff's federal civil

rights, Defendants are alleged to be liable for seven (7) claims involving Section 1983 violations (violation of procedural due process, violation of substantive due process – deliberate indifference, state-created danger, interference with the parent/child relationship, deliberate fabrication of evidence, deliberate suppression of favorable evidence, and chilling a citizen's right to access the courts), retaliation in violation of ADA Title IV, and state law claims based on elder abuse statutes, breach of fiduciary duties owed Plaintiff, professional negligence, and violation of California Business & Professions Code § 17200.

## PARTIES

1.      Plaintiff Katherine M. Dubro is a resident of Fremont, California within Alameda County, and is a 94-year-old mother, grandmother and great grandmother, who has the known disability of dementia without behavioral disorder and was illegally forced into a conservatorship that violated her rights and abused her person and finances, creating a state-created danger that attempted to end her life.

2.      Michael Dubro is a resident within Alameda County and has standing under Rule 17 to pursue Plaintiff's claims as her "next friend" and/or as her "temporary" conservator for more than twenty months and as one of Plaintiff's five children, without whom Plaintiff would be unable to access the courts.

3.      Defendant Dennis Dubro is a resident of Fremont, California within Alameda County, and initiated the conspiracy, described herein, to pursue a vendetta against Plaintiff and to take control of her Trust after waiting beyond the expiration of the statute of limitations for challenging the Trust, after Plaintiff became unable to communicate and resist his challenge. He also fought against allowing Michael Dubro to be appointed as conservator to save Plaintiff from passive euthanasia and other abuses, all in an attempt to immediately obtain a twenty percent share of her Trust assets. One remedy being sought against Dennis Dubro, as discussed more fully herein, is that he be deemed to have predeceased Plaintiff under California Probate Code § 259 as a result of the harms his conspiracy has caused to her.

4.      Defendant Mark Cederborg held himself out as guardian ad litem for the Conservatorship of Katherine M. Dubro and also for the matter filed relating to her Trust, both of which are located within Alameda County. He twice had petitions made to the court to be appointed guardian ad litem over the Trust matter, which petitions were both denied, yet he continues to assert himself into the Trust matter to violate express terms of the Trust and to have the substantial Trust assets placed under the control of private fiduciaries instead of allowing Plaintiff's designated trustee and/or successor trustee to

control Plaintiff's finances as Plaintiff-Settlor had expressly intended. He fabricated false evidence, suppressed favorable evidence, purported to waive Plaintiff's right to a jury trial (but only Plaintiff or her counsel could waive such a right), allowed the conservatorship trial to proceed without Plaintiff present and without her having the right to counsel of her choosing and without any appointed counsel to advocate for her, had the lucrative home care contract (for which Plaintiff was forced to pay) assigned to Defendant LivHOME where his sister was working, and retaliated against Plaintiff, in violation of the ADA, Title IV and the First Amendment, when Michael Dubro filed Plaintiff's claims in state court.

5.     Defendant George McNitt maintains a legal practice in Berkeley, California within Alameda County. Instead of acting as a zealous advocate for his client, as clearly mandated by his ethical duties, he joined the conspiracy and asserted that his only role was to "weigh in" regarding who should be conservator, then proceeded to violate his client's rights and expressed wishes by falsely arguing Michael Dubro had failed as conservator even though Michael saved Plaintiff's life in the first three weeks as her conservator. Fortunately, the judge presiding over the conservatorship at that time saw through his deception and ethical violations and kept Michael Dubro as "temporary" conservator for more than twenty months, and continuing. When Michael Dubro filed Plaintiff's claims in state court, Defendant McNitt retaliated, in blatant violation of the ADA, Title IV and the First Amendment.

6.     Defendant Kristen Boney practices law in Oakland, California within Alameda County. Defendant Boney was Plaintiff's court-appointed attorney who violated ethical duties owed to her client by not advocating for Plaintiff's rights and expressed wishes then withdrawing as counsel on or about June 11, 2016 before the conservatorship trial and leaving Plaintiff without an attorney at that trial. On information and belief, Defendant Boney had an undisclosed close personal relationship with counsel for Defendant Dennis Dubro and she took actions that assisted her close friend at the expense of her client. Defendant Boney's conduct left Plaintiff without legal counsel during the trial and for 18-months of operation of the conservatorship that abused and attempted to passively euthanize Plaintiff.

7.     Defendant Legal Assistance for Seniors ("LAS") maintains an office in Oakland, California within Alameda County. LAS is the entity for which Defendant Kristen Boney works, and at all relevant times worked, and LAS was assigned as counsel for Plaintiff and withdrew as counsel on June 11, 2016 before trial and leaving Plaintiff without legal representation. LAS was re-appointed by

the court as counsel for Plaintiff in late-2019 and again withdrew in early-2020 without ever advocating for their client's rights and expressed wishes. In addition to assigning Defendant Boney to represent Plaintiff, when they knew or should have known that Defendant Boney's close friend was acting as opposing counsel against their client, LAS also had undisclosed conflicts of interest since an officer of LAS and President of its Board of Directors, Phillip Campbell, is a named partner at the firm (Campbell Green LLP) opposing their client's rights and where Defendant Boney's close friend was the other named partner. Campbell Green LLP also has a substantial financial relationship with LAS. LAS further has an improper business relationship with the court, which encourages appeasement of the court rather than zealous advocacy for their client's rights and expressed wishes. Indeed, Alameda County Superior Court provides a monopolistic arrangement to Defendant LAS, through Local Rule 7.820, without any competitive bidding process, whereby all conservatees and proposed conservatees in Alameda County who can afford to pay for their own legal representation are assigned, and forced to accept, an LAS attorney to represent them, apparently without regard to existing conflicts of interest.

8.     Defendant Leo Fernandez Bautista practices as a professional fiduciary dba Bautista, Bautista & Associates in Berkeley, California within Alameda County and he was appointed as conservator for Plaintiff, which conservatorship is located within Alameda County. Defendant Bautista fabricated false evidence, suppressed favorable evidence, unlawfully drugged Plaintiff, restricted her to her home, denied her visits and/or outings with her children, neglected her care, started the process of passive euthanasia, and attempted to deprive her of emergent care.

9.     Defendant LivHOME Inc. dba LivHOME of San Jose provided home care services for Plaintiff at her residence within Alameda County after she was unlawfully placed into a conservatorship, also located within Alameda County. Defendant LivHOME failed to disclose the conflict of interest created by Defendant Cederborg's sister working for them, and participated directly in the illegal drugging and other abuses, including placing Plaintiff on hospice care that was not necessary or reasonable.

10.     Defendant L and C Care Providers, Inc. provided home care services for Plaintiff at her residence within Alameda County after she was placed into a conservatorship, which is located within Alameda County. Defendant L and C Care Providers failed to properly hire, train and oversee its employees who were instrumental in illegal drugging, improper confinement of Plaintiff to hospice care

and other abuses including attempted passive euthanasia, not assisting Plaintiff to use the toilet and forcing her to sit in wet and/or soiled diapers, fabrication of false evidence, and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

11.    Defendant Kellie Ann Hayes practices as a professional fiduciary dba Lucky Fiduciary Services in Livermore, California within Alameda County and she was appointed as a temporary conservator for Plaintiff, which conservatorship is located within Alameda County. Defendant Hayes allowed Plaintiff to continue to be drugged, restricted her to her home, denied her visits and/or outings with her children, neglected her care, allowed abuses and continued the process of passive euthanasia to the point that Plaintiff weighed only 97 pounds before Defendant Hayes was replaced by Michael Dubro, who literally saved his  mother's life as her temporary conservator.

12.    Defendant Dr. Michelle Dhanak practiced medicine, at all times relevant herein, within Alameda County and provided medical care for Plaintiff at her residence within Alameda County after she was placed into a conservatorship, which conservatorship is also located within Alameda County. Defendant Dhanak's care constitutes elder abuse and fell below the reasonable standards of care for a medical professional, as she was instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

13.    Defendant ElderConsult Foundation is the medical practice for which Defendant Dhanak was working at all relevant times herein and which failed to properly hire, train, and oversee Defendant Dhanak. To the extent Defendant ElderConsult was using Plaintiff as a test subject for its stated research goals, such is additionally actionable and reprehensible. Defendant ElderConsult's care constitutes elder abuse and fell below the reasonable standards of care for a medical practice, as it was instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

14.    Defendant Sharon Baldoza, RN, at all times relevant herein, provided home medical care within Alameda County and provided medical care for Plaintiff at her residence within Alameda County after she was placed into a conservatorship, which is also located within Alameda County. Defendant

Baldoza's care constitutes elder abuse and fell below the reasonable standards of care for a nurse, as she was instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

15.     Defendant Guided HealthCare, a Nursing Corporation, is the nursing practice group for which Defendant Baldoza was working, at all relevant times herein, and which failed to properly hire, train, and oversee Defendant Baldoza. Defendant Guided HealthCare's care constitutes elder abuse and fell below the reasonable standard of care for a nursing practice, as it was instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

16.     Defendant Vitas Healthcare Corporation of California provided, at all relevant times herein, services within Alameda County for Plaintiff at her residence within Alameda County after she was placed into a conservatorship, which conservatorship is also located within Alameda County. Defendant Vitas failed to properly hire, train and oversee its employees who were instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

17.     Defendant Ace Home Health Care & Hospice, Inc. provided, at all relevant times herein, hospice services within Alameda County to Plaintiff at her residence within Alameda County after she was placed into a conservatorship, which conservatorship is also located within Alameda County. Defendant Ace failed to properly hire, train and oversee its employees who were instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it.

18.     Defendant Steven Curran, M.D. practices medicine within Alameda County with an office located in Fremont, California within Alameda County and provided medical care for Plaintiff within Alameda County after she was placed into a conservatorship, which is also located within Alameda

County. Defendant Curran's care fell below the reasonable standards of care for a medical professional, as he was instrumental in illegal drugging, improper confinement of Plaintiff to hospice care and other abuses including attempted passive euthanasia and neglect of a large, unsightly and unhealthy cyst that was left unchecked with an undiagnosed cancer growing within it. Defendant Curran also directly participated in fabrication of false evidence and suppression of favorable evidence.

19.    Defendant Daniel Leahy is an attorney who had an office in Oakland, California within Alameda County, who accepted appointment as interim trustee for Plaintiff's Trust, which is located within Alameda County. Defendant Leahy participated in fabrication of false evidence and violated his fiduciary duties, including by not honoring the express terms of the Trust.

20.    At all times herein mentioned, Defendants, and each of them, were the supervisors, agents, servants, employees, and joint venturers of each of the remaining Defendants, and were at all times herein mentioned acting within the course, scope, and purpose of said agency, employment, business, and joint venture.

21.    To the extent that the conduct and omissions alleged herein were perpetrated by one or more of the defendants, the remaining defendants confirmed and ratified said conduct and omissions. All allegations made in this complaint to any act or omission on the part of a Defendant or Defendants shall also be deemed to refer to the act and/or omission of each Defendant. At all relevant times, Defendants and each of them were the knowing agents, alter egos, and/or co-conspirators of one another.

22.    Defendants and each of their officers, directors and managing agents directed, approved and/or ratified the conduct of each other and of their co-defendants, agents and employees, as described herein.

23.    As to Defendants named as Does 1-50, Plaintiff is unaware of their names and/or specific circumstances of their involvement in the claims stated herein and upon discovery of their names and involvement, Plaintiff will seek to amend the complaint to add them as Defendants.

### JURISDICTION

24.    This action arises under Title 42 of the United States Code, Section 1983 and Title IV of the American's with Disabilities Act, Title 42 of the United States Code, Section 12203.  Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343 under federal

question jurisdiction.  This Court has supplemental jurisdiction over California state law claims brought in this case pursuant to Title 28 of the United States Code, Section 1367.  The unlawful acts and practices alleged herein occurred in Alameda County within this District.

**VENUE**

25.    Venue is proper in the United States District Court for the Northern District of California where Plaintiff resides, where Defendants reside and/or conduct business and where the harms occurred.

**"NEXT FRIEND" STANDING**

26.    Michael Dubro qualifies to prosecute these claims on his mother's behalf under next-friend standing. *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001), quoted in *Coalition of Clergy v. Bush*, 310 F.3d 1153, 1159–60 (9th Cir. 2002) ("In order to establish next-friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner.").

27.    Due to Plaintiff's known disability of dementia without behavioral disturbance, she would be unable to access the courts without her son, Michael Dubro, pursuing her claims on her behalf.

28.    Michael Dubro has filed this action on Plaintiff's, his mother's, behalf through standing as her "next friend" and as temporary conservator, in which capacity he literally saved Plaintiff's life from the numerous and heinous abuses she was suffering at the hands of Defendant Dennis Dubro's co-conspirators who were abusing and attempting to passively euthanize Plaintiff, as described herein.

29.    Michael Dubro, as Plaintiff's "next friend", is using his own resources to prosecute these civil claims to stop the abuses, and to seek justice for Plaintiff as a result of the abuses, that were the consequence of Defendant Dennis Dubro's conspiracy to try and take control of Plaintiff's Trust and this action attempts to restore value to her Trust to ensure that Plaintiff has sufficient assets to continue to provide for her needs as she likely now has many years of life remaining under Michael Dubro's care.

30.    If Plaintiff were still able to communicate her wishes, she would want to have her rights, liberties and property restored and protected through these civil claims and to confront Defendant Dennis Dubro's conspiracy and placing of his own agenda, a vendetta and attempted financial gain

through control of the Trust, above Plaintiff's needs and wishes and further attempted to expedite Plaintiff's demise so that he could immediately obtain a 20% share of Plaintiff's assets held in her Trust.

31.    Plaintiff's desire, intent, wishes and interests for prosecution of these civil claims is supported by four of Plaintiff's five children, as well as through substantial evidence from estate planning documents, court hearing transcripts and court investigator's reports created while Plaintiff had better capacity to communicate, all showing that Plaintiff did not want Defendant Dennis Dubro to have control over her personal care or financial affairs, that she did not want to be conserved, that she wanted her care and finances to be managed by her family (with the sole exception being that she didn't want Defendant Dennis Dubro involved) and that she would want her rights, liberties, personal safety, relationship with her children, finances, etc. protected from the abuses caused by the conspiracy.

**GENERAL ALLEGATIONS**

32.    This case is based on an attempted passive euthanasia and other heinous physical, mental, emotional, psychosocial and financial abuses caused by a civil conspiracy that originated as a scheme by Defendant Dennis Dubro, one of Plaintiff's five living children, to attempt to gain control over the 2013 Dubro Family Trust (the "Trust"), in direct contravention of Plaintiff's, the Trust Settlor's, express intent that he not have any control over her affairs and not be allowed to act as trustee for her Trust.

33.    It is important to note that Dennis Dubro was still provided the same twenty percent (20%) successor beneficiary interest in Plaintiff's Trust, equal to the identical interests given to each of Settlor's five living children, Settlor simply determined that she did not want him to be a trustee.

34.    After the statutory time to contest the Trust had already expired, Defendant Dennis Dubro consulted attorneys who informed him he was too late to legitimately challenge the Trust provisions, and that such a challenge would cost him in excess of $100,000 and would likely still be unsuccessful.

35.    Because he had waited too long to legally challenge the Trust, having waited until Plaintiff no longer had sufficient capacity to personally resist it, Defendant Dennis Dubro formed a conspiracy to get around the law by forcing his mother into a conservatorship that she neither wanted nor needed and to then use that forced conservatorship to take control of her Trust, to abuse Plaintiff and to attack his brother, Robert Dubro, and his sister, Maureen Shroyer, who had replaced him as designated trustee and designated successor trustee for the Trust, respectively.

-9-

**THE CONSPIRACY**

36.     Defendants, and each of them, acted in concert with the other Defendants and with the court, with the mutual understanding that they would force Plaintiff into a conservatorship, and/or force her to remain in a conservatorship, against her will through violations of her procedural and substantive due process rights thereby depriving her of all of her liberties and allowing Defendants to take control of her person and finances for their own financial gain.

37.     Defendants, and each of them, agreed to the scheme and unlawfully used the court processes to deprive Plaintiff of her right to counsel, her right to be seen and heard at trial, and her right to have a jury trial, in order to have the judge make a ruling in furtherance of the conspiracy by unnecessarily voiding Plaintiff's advance planning documents and illegitimately forcing her into a conservatorship through a trial where jurisdiction was lacking due to failure to comply with Probate Code § 1825. *See Conservatorship of A.E.*, 45 Cal.App.5th 277 (2020).

38.     Because Defendants' conspiracy deprived Plaintiff of her right to counsel, she couldn't appeal the illegitimate trial court order, and Defendants further took advantage of Plaintiff's lack of legal representation, again in violation of her due process rights, to then take control of her Trust, in violation of express terms of her Trust, and giving the substantial Trust assets to private fiduciaries who have siphoned in excess of $2.5 Million in value from the Trust to pay themselves and the other Defendants.

39.     Defendants, and each of them, agreed to support and/or to continue the conspiracy through deliberate fabrication of false evidence, deliberate or reckless suppression of evidence, allowing creation of an abusive state-created danger that harmed Plaintiff and almost succeeded in causing her early demise through an attempted passive euthanasia.

40.     Typically, and in this case, a conspiracy is evidenced by and inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances, as described herein.

41.     In addition to the circumstantial evidence and reasonable inferences therefrom, on more than one occasion during 2015 and in or before 2016, Defendant Dennis Dubro disclosed through verbal communications with other persons including his brother, Michael Dubro, his intention to establish a forced conservatorship and to illegitimately use that process to take over control of the Trust, to remove

Plaintiff's control over her own Trust and personal affairs, and to remove his siblings who had been designated by Plaintiff as agents to manage her care and finances, and who were designated by Plaintiff, the Trust Settlor, as trustee and successor trustee of her Trust.

42.     At the time, in 2015 and/or 2016 when Defendant Dennis Dubro disclosed his scheme to use a forced conservatorship to take control over Plaintiff's Trust, Michael Dubro did not understand the extent and nature of the abuses Defendant Dennis Dubro intended to cause, neither did Michael know that Dennis' scheme would involve an unlawful conspiracy, though such has now become clear to him.

43.     Defendant Dennis Dubro's conspiracy enlisted assistance from attorneys, including court appointed attorneys with improper and undisclosed conflicts of interest that should have led to recusal from representing Plaintiff, assigned conservators, care providers and even the court, most of whom had undisclosed conflicts of interest that led them into joining the conspiracy to violate Plaintiff's rights, property and liberties.

44.     Defendants, as co-conspirators, then failed to put an end to the reasonably foreseeable abuses that the conspiracy caused, which culminated in an almost successful attempt to end Plaintiff's life through passive euthanasia, which further violated Plaintiff's substantive due process rights.

45.     The invalidly forced conservatorship, achieved through a conspiracy that deprived Plaintiff of both procedural and substantive due process rights, isolated her from her children and grandchildren in violation of the constitutionally-guaranteed liberty right to enjoy the parent/child relationship, it involved deliberate fabrication of false evidence and deliberate or reckless suppression of evidence, included unnecessary and unlawful drugging, led to numerous other abuses and became a state-created danger resulting in substantial physical, mental and psychosocial harms to Plaintiff that left her precariously on the brink of succumbing to Defendants' attempted passive euthanasia.

46.     The co-conspirators' undisclosed conflicts of interest that induced them to join the conspiracy to Plaintiff's detriment and to Defendants' financial gains, include the following:

(i) the attorneys appointed by the court to represent Plaintiff, Defendant LAS, had undisclosed conflicts of interest with Defendant Dennis Dubro's counsel, Campbell Green LLP, and joined the conspiracy by refusing to represent their client's, Plaintiff's, rights and wishes and even withdrawing as counsel leaving her without legal

representation and advocacy at trial. Undisclosed conflicts of interest include (a) the attorney representing Defendant Dennis Dubro was involved in a close personal relationship with Defendant Kristen Boney, who had been assigned by LAS to represent Plaintiff – Defendant Kristen Boney is an attorney with Defendant Legal Assistance for Seniors ("LAS"), which the court forced Plaintiff to accept, and pay, as her counsel; and, (b) a named partner at the law firm that represented Defendant Dennis Dubro in opposition to Plaintiff's rights, Phillip Campbell, is also the CEO and President of the Board of Directors for Defendant LAS, which was the court-appointed law firm for Plaintiff; (ii) the court-appointed guardian ad litem (appointed for a limited purpose through a stipulation) had an undisclosed conflict of interest through his sister's working at a care agency that was "awarded" the lucrative home care contract for which Plaintiff was forced to pay (e.g., Defendant Mark Cederborg, as the limited scope guardian ad litem for Plaintiff, came into the case with an agenda to force the conservatorship through violation of Plaintiff's due process rights –  depriving Plaintiff of legal representation at trial, Plaintiff not being seen or heard at trial, and deprivation of her right to jury trial, leaving the decision to a judge who was known to be a participant in the conspiracy – and then had the lucrative home care contract awarded to Defendant LivHOME, where his own sister was working at the time);

(iii) the court has improper relationships with the court-appointed attorneys who failed to represent Plaintiff, which enticed the court-appointed counsel to appease the court and to not zealously advocate for their client, in violation of their ethical duties and professional responsibility owed to their client, and led them to withdraw as counsel leaving Plaintiff without legal representation during the trial where Plaintiff's procedural due process rights were violated to force her into a non-family run conservatorship. Alameda County Superior Court, through Local Rule 7.820, provides Defendant Legal Assistance for Seniors with a monopolistic contract, whereby all conservatees and proposed conservatees in Alameda County who can afford to pay for their own legal representation are assigned, and forced to accept and pay, LAS as counsel without proper checks for

conflicts and required disqualifications. It is also noted that LAS has admitted that after accepting some of these appointments as legal counsel, they have the court convert their appointment into guardian ad litem instead, which demonstrates further blurring of lines and improper relationship between the court and LAS for LAS' financial gain, as it is not ethically possible for a client's attorney to simply convert into a guardian ad litem in the same case given the conflicting responsibilities between the two appointments;

(iv) the trial judge had undisclosed personal relationships with Defendant Dennis Dubro's attorneys including: (a) upon information and belief, a partner at the law firm that was representing Defendant Dennis Dubro attended a concert with the trial judge during and/or around the same time as the conservatorship trial took place and, upon information and belief, provided other such gratuities to the trial judge; (b) the above described improper ties between the court and LAS and then between LAS and Campbell Green LLP, the firm representing counsel in direct opposition to LAS' client, Plaintiff;

(v) the trial judge and court, through the improper business relationship described in Paragraph 46 subp. (iii), had and continues to have an improper and undisclosed conflict of interest both with Defendant LAS (who received fees that the court forced Plaintiff to pay) and with Mr. Campbell, who is LAS' CEO and Chair of its Board of Directors and his law firm, which was representing Defendant Dennis Dubro and needed to prevail on the petition to force Plaintiff into a conservatorship in order to recoup over $300,000 in legal fees (which fees were later awarded and ordered to be paid from Plaintiff's Trust in conjunction with the conservatorship orders that issued from the invalid trial); and

(vi) Defendants LAS, Kristen Boney, Mark Cederborg, George McNitt, and possibly others routinely engage in *ex parte* communications with the court.

### DUE PROCESS VIOLATIONS – PROCEDURAL

47.    Plaintiff's procedural due process rights were violated at the conservatorship trial as she was neither seen nor heard at the trial, which was improperly conducted *in absentia*, thereby rendering the resulting Order(s) void as the trial court was without jurisdiction to conduct the trial.

/ / /

48.    Plaintiff was not present during the conservatorship trial, in violation of Probate Code § 1825, which deprived the trial court of jurisdiction. *Conservatorship of A.E.*, 45 Cal.App.5th 277 (2020).

49.    Defendant Kristen Boney, the attorney at Defendant LAS assigned to represent Plaintiff, withdrew as counsel before the trial and the court didn't assign new counsel leaving Plaintiff without an advocate at trial where she was unconstitutionally stripped of all her liberties, and her advance planning documents (advanced health care directive and durable power of attorney) were needlessly voided.

50.    Because Plaintiff could not communicate and was not present during trial, and because she was deprived legal representation (even though she could afford to pay for the best representation available to protect her), she was neither seen nor heard, and the lights to the courtroom were metaphorically "never turned on." *See Conservatorship of A.E., supra,* 45 Cal.5th at p. 284.

51.    Plaintiff was unlawfully deprived of her statutory right to a jury trial before being stripped of all her rights and liberties, and having her advance planning documents voided. *See Id.* at p. 283 (citing Cal. Probate Code § 1827). Only Plaintiff or her attorney could have waived that jury trial right, but neither was present, so her jury trial right could not have been properly or actually waived.

52.    The impacts of the conspiracy included violation of Plaintiff's procedural due process rights as she was stripped of all of her rights and liberties and forced into a conservatorship that she didn't want (she had clearly expressed her desire to not be placed into conservatorship and/or to have her children act as her conservator) and that she didn't need (she had an advanced health care directive and durable power of attorney in place and all of her substantial assets were placed into her Trust) through a bench trial where she was not present, she was denied legal counsel, and was deprived of her statutory right to a jury trial without any proper waiver of such right by either herself or her attorney.

53.    Plaintiff's procedural due process rights continued to be violated as she had no attorney during the trial and continued without an attorney for more than two years during operation of the illegitimate conservatorship, during which time Defendants took control of her Trust and began the numerous abuses that culminated in the attempted passive euthanasia, and she still has not ever been provided legal counsel of her choosing or legal counsel who would abide by their ethical duties and professional responsibility to zealously advocate for her rights and express wishes.

/ / /

**DUE PROCESS VIOLATIONS – SUBSTANTIVE**

54.    Plaintiff's substantive due process was also violated, as the co-conspirators ignored their fiduciary duties to facilitate her well-being through the least restrictive means available, instead placing her in a completely restrictive and confining environment and a state-created danger where her life was imperiled by the co-conspirators who were more interested in covering up their conspiracy than providing the care Plaintiff deserved – all of which was undertaken by Defendants with deliberate indifference to Plaintiff's rights and which conduct shocks the conscience of any reasonable person.

55.    The co-conspiracy committed atrocities including, but not limited to, the following:

(i) Plaintiff was falsely imprisoned in her own home;

(ii) she was often confined to her own bed and not allowed to toilet but rather was left sitting in soiled and/or wet diapers, causing her physical as well as psychological harms;

(iii) she was denied visitation and/or outings with her children and, at times, was denied any outings whatsoever, which harmed her psychosocially,

(iv) she was illegally and unnecessarily drugged with potent psychotropic drugs as a form of chemical restraint, which harmed her physically and mentally,

(v) she was placed on hospice care for close to two years without cause, as she is now off hospice and likely still has many years of life ahead with Michael Dubro as conservator,

(vi) a tumor growth on her neck was allowed to grow without proper attention for close to two years, to the point that it had become unsightly, a threat for infection, and contained a cancer that had been allowed to grow undiagnosed and unchecked for so long that it has created a residual risk for metastasis or future cancer, and

(vii) she was deprived nutrition and hydration in a form of attempted passive euthanasia – she steadily lost weight through the abuses brought about by Defendants' actions and inactions, losing in excess of 50 pounds during the non-family operated conservatorship, as her weight dropped to 97 pounds and she was precipitously declining without any attempted intervention by Defendants to forestall her malnutrition and imminent death.

56.     Fortunately, Plaintiff's son, Michael Dubro, was eventually appointed as temporary conservator for her person and estate on or about August 11, 2020, but only after Plaintiff had suffered more than three years of abuse by the co-conspirators and was on the brink of suffering a death sentence.

57.     Michael Dubro literally saved Plaintiff's life by providing proper attention to her nutrition and hydration through taking the extra time and care needed to ensure she eats and drinks, helping her gain fifteen pounds in just three weeks and restoring her psychosocial well-being through visits and outings with her children. (Declaration of Dr. Sandra K. Wong, attached hereto as Exhibit A.)

58.     With Plaintiff's dermatologist and primary care physician, Michael Dubro had the large, unsightly and unhealthy cyst removed from his mother's neck, where cancer was discovered, but follow up treatment and diagnostics were necessitated by the three years of neglect by the co-conspirators. (Id.)

59.     Plaintiff's current treating physician helped Michael Dubro restore his mother's health and has opined that without Michael Dubro's interventions, Plaintiff would not have survived the prior abuses and attempted passive euthanasia by the co-conspirators. (Id.)

60.     Plaintiff's treating physician opines that Plaintiff's physical and psychosocial well-being is best supported with Michael Dubro as her conservator and with her children able to be with her.

61.     Notwithstanding the undeniable beneficial results and immediate impacts Michael Dubro effected as conservator, Plaintiff's court-appointed attorney Defendant George McNitt ludicrously argued to the court, in violation of his professional and ethical duties owed to his client, that Michael Dubro had somehow been "a complete failure" as conservator in the short period of his first three weeks as conservator; the same three weeks during which Michael Dubro had actually saved his mother's life.

62.     Fortunately, the court (a different judge than those previously acting in concert with the co-conspirators) saw through the deception and nonsense and retained Michael Dubro as his mother's conservator to reunite Plaintiff with her children and allow them to save her life and restore her health.

63.     The judge presiding over the probate case at that time asked Plaintiff's court-appointed attorney, Defendant George McNitt, to provide facts to support his baseless arguments against his own client's rights, interests and wishes; however, Defendant McNitt could not provide any facts to support his statements that were unabashedly made in violation of his ethical duties owed to his client, because the benefits of Michael Dubro acting as conservator were, and are, beyond any reasonable dispute.

**ACCESS TO STATE COURT STANDING BLOCKED WITH UNLAWFUL RETALIATION**

64.    Michael Dubro filed Plaintiff's claims in state court seeking redress for the harms caused to her and opposing violations of her rights under the ADA and the U.S Constitution, as well as other laws meant to protect her and others like her, who are citizens and have a known disability of dementia.

65.    In response to Plaintiff's claims being filed in state court, including claims relating to violations of her ADA rights to not be discriminated against (e.g., not being allowed her choice of counsel and not being provided a zealous legal advocate like what every litigant who doesn't have dementia is allowed), the co-conspirators brazenly and unlawfully retaliated, including through written requests to the court seeking to remove Michael Dubro as Plaintiff's conservator even though he saved his mother's life and was brilliantly fulfilling his duties as conservator, and this retaliation violates the anti-retaliation aspects of the First Amendment and Title IV of the ADA.

66.    Defendants then continued the conspiracy and threatened to return Plaintiff to the state-created danger and abuses of the non-family run conservatorship, which included attempted passive euthanasia through deprivation of nutrition, while arguing that only a permanent conservator of the estate has standing to file civil claims in state court for Plaintiff.

67.    Michael Dubro, and his siblings Robert, Maureen and Mary Jeanne, were not willing to risk the horrors of returning Plaintiff to the state-created danger and to the abuses of the non-family run conservatorship, so Michael Dubro had the previous state complaint dismissed without prejudice.

68.    The state court did retaliate, as follows: (1) the presiding judge directed recusal of the judge who had appointed Michael Dubro as conservator, (2) the judge who recused herself, refused to allow counsel to address the significant ADA, Constitutional and other civil rights abuses, (3) the probate case was reassigned back to a previously assigned judge, who appeared to be involved in the conspiracy and who had refused to acknowledge the threat to health and life posed by the state created danger of the prior conservatorship and who, in fact, has never asked about Plaintiff's health and welfare during the now more than three total years he has presided over numerous hearings in the probate case, and (4) other actions by the court clerks to delay and/or to refuse to accept additional filings by four of Plaintiff's five children aimed at restoring and/or protecting Plaintiff's rights, including her rights under the Constitution and the Americans with Disabilities Act.

69.     Defendants, in conjunction with the reassigned judge, have furthered the conspiracy through continued threats of retaliation and refusal to make permanent Michael Dubro's appointment as conservator (which has been continued as "temporary" for 20 months) of his mother's person and estate.

70.     The co-conspirators have admitted, as they must, that Michael Dubro should remain as his mother's conservator, but they continue to refuse to allow his appointment to be made permanent.

71.     Michael Dubro has been "temporary" conservator for Plaintiff continuously since August 11, 2020, but the co-conspirators have refused to allow him to be appointed as permanent conservator. The reason for this refusal to make the conservatorship appointment permanent is because in state court, Michael Dubro would only have standing to pursue these claims as permanent conservator of the estate and Defendants, who are being assisted by the state court, continue to hold the threat that if Plaintiff's Constitutional, ADA and other rights are pursued through her right to access the courts, then they may unlawfully retaliate by returning Plaintiff to the state-created danger and abuses of the non-family run conservatorship, in further and continuing violation of Title IV of the ADA and of the First Amendment.

72.     **Michael Dubro remains "temporary" conservator of Plaintiff's person** and was "temporary" conservator of Plaintiff's estate from August 11, 2020 until early April of 2022, when the co-conspirators pressured him to relinquish that conservatorship of estate role to a third party even though there has been no good cause or justification for forcing that change.

73.     The co-conspirators' purpose in pressuring Michael Dubro to yield temporary conservator of the estate to a third party is two-fold:

(1) It is an attempt to deprive Michael Dubro of standing to pursue these claims in state court. Indeed, the co-conspirators successfully argued that only a permanent conservator of the estate has standing to pursue Plaintiff's claims in state court, which means that Plaintiff is denied access to file her claims in state courts based on her disability (a violation of the ADA and the First Amendment), as there has been no permanent conservator of her estate since on or about June of 2019 and there still is no permanent conservator of her estate.

(2) It is a continuance of the conspiracy to remove control of Plaintiff's finances from Plaintiff's children, whom Plaintiff clearly intended should be controlling her Trust and financial affairs.

/ / /

1

**CO-CONSPIRATORS WITH THE STATE COURT ARE STATE ACTORS**

2

74.     The state court has immunity and, therefore, no judges or state court officials are being

3

pursued here; but the conspiracy and use of court processes to carry out abuses of the conspiracy, makes

4

the co-conspirators "state actors", acting in their individual capacities, who are subject to personal

5

liabilities for the Section 1983 violations and other claims asserted herein. *See Tower v. Glover*, 467

6

U.S. 914, 920 (1984); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *See also Lugar v. Edmondson*, 457

7

U.S. 922 (1982). Defendants are sued in their individual capacities only and not in any official capacity.

8

**PLAINTIFF'S DISABILITY TOLLS THE STATUTE OF LIMITATIONS**

9

75.     Plaintiff has the known disability of dementia, and at all relevant times has been unable to

10

prosecute her claims due to lack of capacity to make decisions. As a result, no applicable statute of

11

limitations has begun to run against the claims brought here. (e.g., California's 2-year statute of

12

limitations for personal injury claims set forth in Code of Civil Procedure § 335.1 is tolled while

13

Plaintiff lacks capacity to make decisions, through application of Code of Civil Procedure § 352.)

14

**CAUSES OF ACTION**

15

**FIRST CLAIM**

16

42 U.S.C. § 1983 – 5th and 14th Amendments – Procedural Due Process

17
18

[Against Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Douglas Housman and DOES 1-50]

19

76.     Plaintiff realleges and incorporates Paragraphs 1 through 75, as though set forth herein.

20

77.     Under Title 42, Section 1983, Plaintiff asserts violations of the 5th and 14th Amendments

21

to the United States Constitution, as depriving Plaintiff of property, rights and liberties, without due

22

process of law (procedural due process).

23

78.     Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal

24

Assistance for Seniors, Leo Fernandez Bautista, Kellie Ann Hayes, Daniel Leahy, Douglas Housman,

25

DOES 1-50 and each of them, conspired to and did knowingly violate Plaintiff's rights to due process.

26

79.     These Defendants, and each of them, violated Plaintiff's rights to due process prior to

27

depriving her of her liberties and property, as discussed above, including through active participation in the

28

deprivation at the time and/or through refusal to ensure she was provided such through a retrial.

80.     These Defendants, and each of them, was a state actor through their conspiracy with the courts and using court processes to carry out the conspiracy and deprive Plaintiff of her property and liberties even though they knew or should have known she was not afforded the due process guaranteed to any proposed conservatee in California and/or by refusing to take action to restore her rights, liberties and property when made aware of the unconstitutional impingement of her rights that had occurred.

81.     The Defendants, and each of them, owed fiduciary duties to Plaintiff to ensure that her rights, including her due process rights, were protected but failed to so protect them.

82.     These Defendants, and each of them, knew or should have known that Plaintiff was entitled to have legal counsel zealously represent her to protect her rights, liberties and property.

83.     These Defendants, and each of them, knew or should have known Plaintiff was required to be present, seen and heard, during any trial or hearing impacting her rights, liberties and/or property and that her presence was a jurisdictional prerequisite for the trial; yet they failed to ensure compliance with this jurisdictional prerequisite either during, or after completion of, the void or voidable trial.

84.     These Defendants, and each of them, knew or should have known that Plaintiff was entitled to a jury trial to protect her rights and expressed wishes in the conservatorship trial impacting her rights, liberties and property; yet, they have made no attempt to provide her that right to jury trial.

85.     Notwithstanding their knowledge, whether actual or imputed, these Defendants, and each of them, refused to ensure that Plaintiff (i) was provided legal counsel to zealously represent her rights and expressed wishes, (ii) was present to be seen and heard as a jurisdictional prerequisite to a valid trial, and/or (iii) was provided her right to a jury trial.

86.     As a result of Defendants', and each of their, conduct described herein, Plaintiff was harmed economically (millions of dollars were siphoned from her Trust assets), physically (she almost died as a result of passive euthanasia, etc.), mentally (she was deprived the loving care and support of her children, which she missed) and psychosocially (nothing was done to provide her psychosocial stimulation) according to further proof at trial.

87.     Defendants', and each of their, conduct described herein was a substantial factor in causing Plaintiff's harms.

88.     Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights and safety as Defendants allowed her to be stripped of all her rights, liberties and property without legal counsel to represent her and refused, or otherwise failed, to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their actions or inactions violated Plaintiff's rights under federal law; and/or

(iii) Defendants, and each of their, actions or inactions oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself.

89.     Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their actions and/or failures to act that deprived her of due process.

**SECOND CLAIM**

42 U.S.C. § 1983 – 5th and 14th Amendments – Substantive Due Process

[Against All Named Defendants and DOES 1-50]

90.     Plaintiff realleges and incorporates Paragraphs 1 through 89, as though set forth herein.

91.     Under Title 42, Section 1983, Plaintiff asserts violations of the 5th and 14th Amendments to the United States Constitution, through deliberate indifference that deprived Plaintiff of rights that are fundamental, and "implicit in the concept of ordered liberty."  This includes the protection against "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

92.     In particular, Defendants' conduct, actions, failures to act, direct participation in the abuses, and/or failure to stop the abuses violated Plaintiff's rights to substantive due process because, in addition to other abuses:

(i) she was not present during the trial as mandated under California Probate Code section 1825,

(ii) she was deprived of her right to a jury trial,

(iii) she was deprived legal counsel altogether at the trial that took away all her rights, liberties and property and has never been allowed counsel of her choosing or counsel who would advocate for her rights and expressed wishes,

(iv) through more than two and a half years of operation of the conservatorship, her right to counsel was continuously denied, and as a consequence:

(v) control over her Trust and Trust assets was taken away from her and from her designated trustee and designated successor trustee,

(vi) she was drugged unlawfully as a form of chemical restraint,

(vii) she was isolated from her family,

(viii) she was falsely imprisoned by being house bound and bed bound,

(ix) she was denied visits and outings,

(x) her assets were improperly and unnecessarily expended to pay Defendants for services she did not need, and which were used to enrich the co-conspirators,

(xi) she was deprived nutrition/hydration and prudent medical care leading to allowing her to waste away and almost succeeded in an attempt at passive euthanasia,

(xii) she was deprived competent medical care to remove an unsightly cyst that became cancerous and created a substantial risk of recurrence and/or metastasis to other parts of her body,

(xiii) the private fiduciaries improperly took over her 2013 Dubro Family Trust and assigned themselves in direct contravention of her express designations of trustee and successor trustee,

(ix) her trust has now had in excess of Two Million Dollars ($2,000,000) of its value siphoned off to pay the co-conspirators,

(x) Plaintiff's rights were scuttled and her needs intentionally disregarded/grossly neglected, and

(xi) Since Plaintiff's life was saved and her physical health restored by Michael Dubro as appointed conservator, she is likely to live many more years and would need to recoup the finances siphoned off from her Trust assets by the Defendants and co-conspirators.

93.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, LAS, Leo Bautista, Kellie Hayes, Daniel Leahy, Douglas Housman, Dr. Dhanak, Dr. Curran, Sharon Baldoza, DOES 1-50 and each of them, conspired to and did directly violate Plaintiff's due process rights, as discussed above.

94.    Defendants Mark Cederborg, Leo Bautista, Kellie Hayes, Douglas Housman, LivHOME, L and C, ElderConsult, Dr. Dhanak, Dr. Curran, Sharon Baldoza, Guided HealthCare, Vitas, Ace Home Health & Hospice, Inc. and Does 1-50 are "Supervisorial Defendants" whose subordinates' direct actions or failures to act participated in the abuses and violations of due process discussed above.

95.    The Supervisorial Defendants either:

(i) directed their subordinates in the actions or failures to act or directed them to participate in the abuses and violations of due process discussed above;

(ii) set in motion a series of acts by their subordinates, or knowingly refused to terminate a series of acts by their subordinates, that they knew or reasonably should have known would cause the subordinate's actions or failures to act or to participate in the abuses and violations of due process discussed above;

(iii) knew that their subordinates were engaging in these acts and knew or reasonably should have known that the subordinate's conduct would deprive the plaintiff of these rights; and failed to act to prevent their subordinates from engaging in actions or failures to act or to participate in the abuses and violations of due process discussed above;

(iv) disregarded the known or obvious consequence that training deficiency or omission relating to the actions or failures to act or participation in the abuses and violations of due process discussed above; and such training deficiency or omission actually caused their subordinates to deprive Plaintiff of her constitutional rights, as discussed above; and/or

(v) directly engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others (e.g., knowing about and not stopping use of powerful

psychotropic drugs as a chemical restraint – including Seroquel, which has a "black box warning" to closely monitor and vigorously restrict its use, confining Plaintiff or allowing Plaintiff to be confined, to hospice care for almost two years, etc.)

96.    As a result of Defendants', and each of their, conduct described herein, Plaintiff was harmed economically (millions of dollars were siphoned from her Trust assets), physically (she almost died as a result of attempted passive euthanasia, etc.), mentally (she was deprived the loving care and support of her children, which she missed) and psychosocially (nothing was done to provide her psychosocial stimulation) according to further proof at trial.

97.    Defendants', and each of their, conduct described herein was a substantial factor in causing Plaintiff's harms.

98.    Defendants' conduct was malicious, oppressive or in reckless disregard of the Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights and safety as Defendants allowed her to be stripped of all her rights, liberties and property without legal counsel to represent her and refused, or otherwise failed, to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their actions or inactions violated Plaintiff's rights under federal law; and/or

(iii) Defendants' actions or inactions oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse of the authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself.

99.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their actions and/or failures to act that deprived her of due process.

**THIRD CLAIM**

42 U.S.C. § 1983 – 14th Amendment – State-Created Danger

[Against All Named Defendants and DOES 1-50]

100.    Plaintiff realleges and incorporates Paragraphs 1 through 99, as though set forth herein.

101.    Under Title 42, Section 1983, Plaintiff asserts a violation of the 14th Amendment to the United States Constitution, as depriving Plaintiff of the fundamental right to not be placed in danger.

102.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Douglas Housman, Dr. Curran, Dr. Dhanak, Sharon Baldoza, DOES 1-50 and each of them, conspired to and did directly violate Plaintiff's rights to due process, as discussed above.

103.    Defendants Mark Cederborg, Leo Bautista, Kellie Hayes, LivHOME, L and C, ElderConsult, Dr. Dhanak, Dr. Curran, Guided HealthCare, Vitas, Ace Home Health & Hospice, Inc. and Does 1-50 are "Supervisorial Defendants" whose subordinates' direct actions or failures to act participated in the abuses and violations of due process discussed above and these Supervisorial Defendants each participated in the abuses as set forth in Paragraph 95, above.

104.    As a result of the affirmative acts or failures to act discussed in Paragraph 94 above, and/or supervisorial failings discussed in Paragraph 95 above, Defendants, and each of them, placed plaintiff in danger of harms that she would not have otherwise faced, including but not limited to attempted passive euthanasia through deprivation of nutrition, being improperly drugged, being deprived of the family society needed to sustain her will to live and to keep her going psychosocially, and generally neglecting her care including leaving an unsightly and unhealthy cyst on her neck growing unchecked and untreated with an undiagnosed cancer also growing within the cyst and allowed to grow so large that it has created a continuing significant risk of additional cancer.

105.    Defendants, and each of them, disregarded the known or obvious consequences of their actions or inactions. In other words, Defendants knew that Plaintiff was likely to suffer harms (i) from not providing her nutrition and allowing her to waste away, (ii) from administering powerful psychotropic drugs as a "not medically necessary" chemical restraint, (iii) by developing a risk of cancer through neglecting a growing cyst, but they ignored the risks and still exposed Plaintiff to these risks.

-25-

106.    The resulting risks and harms to Plaintiff from Defendants', and each of their, actions, including failures to act were foreseeable.

107.    Defendants', and each of their, conduct described herein was a substantial factor in causing Plaintiff's harms.

108.    Defendants' conduct was malicious, oppressive or in reckless disregard of the Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of the Plaintiff's rights, under the circumstances, and reflects complete indifference to the Plaintiff's rights and safety as Defendants allowed her to be stripped of all her rights, liberties and property without legal counsel to represent her and refused or otherwise failed to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their actions or inactions violated Plaintiff's rights under federal law; and/or

(iii) Defendants, and each of their, actions or inactions oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself.

109.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their actions and/or failures to act depriving her of due process.

### **FOURTH CLAIM**

42 U.S.C. § 1983 – 4th, 5th and 14th Amendments – Interference with Parent/Child Relationship

[Against All Named Defendants and DOES 1-50]

110.    Plaintiff realleges and incorporates Paragraphs 1 through 109, as though set forth herein.

111.    Under Title 42, Section 1983, Plaintiff asserts a specific violation of the 4th, 5th and 14th

Amendments to the United States Constitution, as interfering with Plaintiff's fundamental right to the parent/child relationship with her adult children.

112.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Douglas Housman, Dr. Curran, Dr. Dhanak, Sharon Baldoza, DOES 1-50 and each of them, conspired to and did directly violate Plaintiff's rights to due process, both procedural and substantive as discussed above, which resulted in violation of Plaintiff's right to enjoy her relationship with four of her five children. (Defendant Dennis Dubro has shown that he has no interest in establishing or maintaining a relationship with his mother as he has even ceased the short weekly or monthly visits of less than an hour that he used to make purely "for show", and there is no right to force Defendant Dennis Dubro to accept a parent/child relationship.)

113.    Defendants Mark Cederborg, Leo Bautista, Kellie Hayes, Douglas Housman, LivHOME, L and C, ElderConsult, Dr. Dhanak, Dr. Curran, Guided HealthCare, Vitas, Ace Home Health & Hospice, Inc. and Does 1-50 are "Supervisorial Defendants" whose subordinates' direct actions or failures to act participated in the abuses and violations of due process discussed above and these Supervisorial Defendants each participated in the abuses as discussed above in Paragraph 95, which resulted in violation of Plaintiff's right to enjoy her relationship with her children.

114.    As a result of the affirmative acts or failures to act discussed above in Paragraph 94, and/or supervisorial failings discussed above in Paragraph 95, Defendants, and each of them, placed Plaintiff in the position where her right to enjoy her relationship with four of her five children was interfered with, including through not being allowed to have her children provide companionship and custodial care for her as she had set forth in her advance planning documents, being restricted and even denied outings and visits with her children and grandchildren, being restricted and denied celebrations on Easter, Christmas, Thanksgiving and other holidays through family gatherings, and more.

115.    As a result of the affirmative acts or failures to act discussed above, and/or supervisorial failings discussed above, Defendants, and each of them, also placed Plaintiff in the position where her right to enjoy her relationship with four of her five children was restricted through unlawful drugging as a form of chemical restraint, which made her unable to interact with four of her five children thereby further negatively and improperly interfering with her right to the parent/child relationship.

116.    The resulting risks and harms to Plaintiff's right to a parent/child relationship with four of her five children, from Defendants' and each of their actions, including failures to act, were foreseeable.

117.    Defendants', and each of their, conduct described herein was a substantial factor in causing harms to Plaintiff's right to enjoy her parent/child relationship with four of her five children.

118.    Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the outrageousness and character of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights as Defendants allowed her to be stripped of all her rights, liberties and property without legal counsel to represent her and refused or otherwise failed to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their actions or inactions violated Plaintiff's rights under federal law; and/or

(iii) Defendants, and each of their, actions or inactions oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself.

119.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their actions and/or failures to act depriving her of due process.

### FIFTH CLAIM

42 U.S.C. § 1983 – 14th Amendment – Deliberate Fabrication of Evidence

[Against Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Dr. Curran, Dr. Dhanak and DOES 1-50]

120.    Plaintiff realleges and incorporates Paragraphs 1 through 119, as though set forth herein.

121.    Under Title 42, Section 1983, Plaintiff asserts a specific violation of the 14th Amendment

to the United States Constitution, as deliberate fabrication of evidence used to prosecute Plaintiff and strip her of all of her liberties and property and continued fabrication of evidence presented during hearings used to further impinge her rights unlawfully.

122.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Dr. Curran, Dr. Dhanak and DOES 1-50 and each of them, conspired to and did deliberately fabricate false evidence used against Plaintiff.

123.    Deliberately fabricated evidence included, but is not necessarily limited to, evidence used during the void or voidable trial in the form of inadmissible video and false "interpretations" of the video, false testimony about the level of care and safety provided to Plaintiff by her designated agents and caregivers including her children, false and inadmissible "testimony" used to obtain a restraining order to further restrict Plaintiff's rights to enjoy the care and companionship of at least one of her children – all of which fabricated evidence was used at trial and/or hearings where Plaintiff was denied legal counsel of her own choosing or any legal counsel whatsoever.

124.    These Defendants, and each of them, conspired to and did (i) deliberately fabricate false evidence used to prosecute Plaintiff and take away her liberties and property; (ii) continued their investigation of Plaintiff despite the fact that they knew Plaintiff did not need to be conserved and was not being abused or neglected by her children Robert, Maureen, Mary Jeanne or Michael; or each Defendant was deliberately indifferent to Plaintiff's not being abused or neglected by her children Robert, Maureen, Mary Jeanne or Michael, and the results of the investigation(s) were used to prosecute Plaintiff and impinge her rights and liberties and to take her property; and/or (iii) used techniques that were so coercive and abusive (e.g., using inducements of employment or other financial gain) that they knew, or were deliberately indifferent to the fact, that those techniques would yield false information that was used to prosecute Plaintiff and impinge her rights and liberties and to take her property.

125.    These Defendants, and each of them, consciously or recklessly disregarded the consequences of their acts or omissions discussed above.

126.    These Defendants', and each of their, conduct was a substantial factor in causing harms to Plaintiff's rights to liberties, property, and care by and companionship with her children.

127.    These Defendants' conduct supports a punitive damages award as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the outrageousness and character of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights as These Defendants allowed her to be stripped of all her rights, liberties and property without legal counsel to represent her and refused or otherwise failed to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their actions or inactions violated Plaintiff's rights under federal law; and/or

(iii) These Defendants, and each of their conduct injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself and her being deprived of the right to legal counsel to advocate on her behalf.

128.    Plaintiff seeks damages, including economic, non-economic and punitive damages and costs including attorneys' fees, based on the harms caused by these Defendants, and each of their conduct depriving her of due process and deliberately fabricating false evidence to do so.

## SIXTH CLAIM

42 U.S.C. § 1983 – 14th Amendment – Deliberate or Reckless Suppression of Evidence

[Against Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Dr. Curran, Dr. Dhanak and DOES 1-50]

129.    Plaintiff realleges and incorporates Paragraphs 1 through 128, as though set forth herein.

130.    Under Title 42, Section 1983, Plaintiff asserts a specific violation of the 14th Amendment to the United States Constitution, as deliberate or reckless suppression of favorable evidence that would have exonerated Plaintiff at trial and shown she did not need to be stripped her of all of her liberties and property and/or at hearings used to further unlawfully impinge her rights to care and companionship provided by her children, including at a hearing used to place a restraining order on one of her children.

/ / /

131.     Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Dr. Curran, Dr. Dhanak and DOES 1-50 and each of them, conspired to and did deliberately or recklessly suppress evidence that would have negated the fabricated "need" for conservatorship and/or would have negated the "need" for a protective order or further restriction on Plaintiff's rights to companionship and care provided by her children.

132.     Deliberately or recklessly suppressed evidence included evidence from treating doctors, caregivers and records demonstrating the extraordinary level of care for Plaintiff's health, life and safety provided by her children both as her designated agents for managing her care and as her care providers, which was acknowledged immediately after the void or voidable conservatorship trial and/or evidence that Plaintiff's son did not engage in any inappropriate conduct because (i) he has medical training and (ii) performed a medically necessary procedure for his mother (iii) with assistance from a caregiver, and (iv) the procedure is described as medically expedient in readily available medical literature (v) and the precise procedure had actually been performed previously by the caregiver who assisted him, (vi) the assisting caregiver was hired and supervised by Defendants, (vii) the caregiver who previously performed the procedure has no medical training or background – all of which evidence was suppressed and not used by Defendants at trial and/or hearings where Plaintiff was denied legal counsel of her choosing or any legal counsel whatsoever and was also denied her right to a jury trial.

133.     These Defendants, and each of them, conspired to and did deliberately or recklessly suppress exonerating evidence that would have demonstrated Plaintiff did not need to have her liberties and property taken away and/or to be further restricted through a restraining order against her son.

134.     These Defendants, and each of them, consciously or recklessly disregarded the consequences of their acts or omissions discussed above.

135.     These Defendants', and each of their, conduct was a substantial factor in causing harms to Plaintiff's rights to liberty, property, and care from and companionship with her children.

136.     These Defendants' conduct was malicious, oppressive or in reckless disregard of the Plaintiff's rights as follows:

(i) the conduct was malicious as it was with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro and also as inferred by the outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights as These Defendants allowed her to be stripped of all her rights, liberties and property without legal counsel to represent her and refused or otherwise failed to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their actions or inactions violated Plaintiff's rights under federal law; and/or

(iii) These Defendants, and each of their, actions or inactions oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself and her being deprived of the right to legal counsel to advocate on her behalf.

137.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their actions and/or failures to act depriving her of due process and suppression of exonerating evidence.

## <u>SEVENTH CLAIM</u>

42 U.S.C. § 1983 – First Amendment – Retaliation to Chill Citizen's Right to Access Courts

[Against All Named Defendants and DOES 1-50]

138.    Plaintiff realleges and incorporates Paragraphs 1 through 137, as though set forth herein.

139.    Under Title 42, Section 1983, Plaintiff asserts a violation of the 1st Amendment to the United States Constitution, as chilling a citizen's right to access the courts.

140.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Douglas Housman, Dr. Curran, Dr. Dhanak, Sharon Baldoza, DOES 1-50 and each of them, conspired to and did directly violate and "chill" Plaintiff's rights to access the courts.

141.    Defendants Mark Cederborg, Leo Bautista, Kellie Hayes, Douglas Housman, LivHOME, L and C, ElderConsult, Dr. Dhanak, Dr. Curran, Guided HealthCare, Vitas, Ace Home Health & Hospice, Inc. and Does 1-50 are "Supervisorial Defendants" whose subordinates' direct actions or

failures to act participated in the abuses and violations of due process discussed above in Paragraph 95, and these Supervisorial Defendants each participated in the retaliations aimed at chilling Plaintiff's access to the courts.

142.    Plaintiff was engaged in the constitutionally protected activity of accessing or petitioning the courts, through four of her five children, seeking redress for the harms caused by the violations of her rights set forth above and by filing her civil claims in state court, through her son and temporary conservator of her estate and person, Michael Dubro.

143.    Defendants, and each of them, retaliated against Plaintiff for attempts to petition the court through her children while she was deprived of legal counsel to advocate for her and further retaliated against Plaintiff when her civil claims were filed in state court.

144.    Retaliations for accessing the courts included, but are not necessarily limited to the following in response to petitions made directly to the probate court: (i) began unnecessary and unlawful drugging with powerful psychotropic drugs, (ii) restricted, and then denied outright, visits and outings with her children, (iii) fabricated false evidence to obtain a restraining order to further restrict visits with her children, (iv) increased the amounts of money being taken from her Trust assets to pay Defendants, (v) removed her children and their substantial assistance in providing superior care for her; and further (vi) neglected her care and attempted to commit passive euthanasia and hasten her death.

145.    Retaliation for accessing the courts included, but are not necessarily limited to the following in response to filing civil claims in state court seeking redress for violations of Plaintiff's rights, including violations of her rights under the ADA and U.S. Constitution: (i) requested retaliation by the probate court through removal of her son, Michael Dubro, as conservator (ii) threatened return to the state-created danger, described above, of the non-family run conservatorship, (iii) refused to make permanent her son's appointments as "temporary" conservator, (iv) increased the amounts of money being taken from her Trust assets, (v) threatened removal of her children's access to providing companionship to her and removal of their substantial assistance in providing superior care for her; and (vi) threatened return to the neglected care and attempted passive euthanasia to hasten her death.

146.    Defendants' conduct described herein would chill a person of ordinary firmness from accessing the courts through petitioning the probate court and/or pursuing civil claims in state court.

147.    Plaintiff's accessing the courts, through petitioning the probate court and/or filing of civil claims in state court was a substantial or motivating factor of the Defendants' described retaliations.

148.    Defendants' conduct was malicious, oppressive or in reckless disregard of the Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights and safety as Defendants threatened to again allow her to be stripped of all her rights, liberties and property without legal counsel zealously advocating for her and refused to, or otherwise failed to step in and stop, the violence to her rights and person when the abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their conduct violated Plaintiff's rights under federal law; and/or

(iii) Defendants, and each of their, actions or inactions oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority or power Defendants were given that was supposed to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's known disability of dementia without behavioral disturbance and inability to advocate for herself.

149.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their actions and/or failures to act, which conduct violated the First Amendment by chilling Plaintiff's, a citizen's, right to access the courts.

## **EIGHTH CLAIM**

### Violation of ADA, Title IV – Retaliation for Opposing ADA Violations

[Against Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney,
Legal Assistance for Seniors, Douglas Housman, DOES 1-50]

150.    Plaintiff realleges and incorporates Paragraphs 1 through 149, as though set forth herein.

151.    Under Title 42 of the United States Code, Section 12203, Plaintiff asserts violations of

the anti-retaliation provisions contained in Title IV of the American's with Disabilities Act, and asserts such against these Defendants, in their personal capacities, for retaliatory discrimination against Plaintiff in response to opposing violations of ADA, Title II, public services/access to the courts. *See Shotz v. City of Plantation*, 344 F.3d 1161 (11ᵗʰ Cir. 2003); *Minkley v. Eureka City Sch.*, No. 17-cv-3241-PJH, 2017 WL 4355049 (N.D. CA Sept. 292017) followed by *Judah v. Ovsak*, 550 F.Supp.3d 687 (D. Minn. 2021); *P.H. v. Compton Unified Sch. Dist.*, No. 20-cv-2233-DMG, 2021 WL 6751879 (C.D. CA 2021).

152.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Douglas Housman, DOES 1-50 and each of them, conspired to and did engage in retaliatory discrimination against Plaintiff in response to oppositions to ADA violations that had been carried out against Plaintiff in the public services context due to her known disability of dementia.

153.    Through her children, Plaintiff was opposing the violations of her ADA rights, including depriving her of (i) counsel of her own choosing, (ii) counsel to be a zealous advocate for her rights and known wishes and/or (iii) any legal representation whatsoever during trial and for almost two years of abuse under the non-family run conservatorship, each and all of which rights are provided to litigants who do not have dementia, which constitutes *per se* discrimination against persons with the disability.

154.    Retaliatory discrimination against Plaintiff for opposing ADA violations against her included, but are not necessarily limited to the following in response to petitions made directly to the probate court: (i) unnecessary and unlawful drugging with powerful psychotropic drugs, (ii) restricted, and then denied outright, visits and outings with her children, (iii) fabricated false evidence to obtain a restraining order to further restrict visits with her children, (iv) increased the amounts of money being taken from her Trust assets, (v) removed her children and their substantial assistance in providing superior care for her; and (vi) neglected her care and attempted passive euthanasia to hasten her death.

155.    Retaliation for filing civil claims in state court to oppose the ADA violations against Plaintiff included, but are not necessarily limited to the following: (i) Defendants Mark Cederborg and Douglas Housman through written submissions filed with the court, and Defendants George McNitt, Kristen Boney and Legal Assistance for the Elderly through communications of verbal threats of ex parte communications with the court, requested that the probate court remove her son, Michael Dubro, as her "temporary" conservator, (ii) continuing threats to return of the state-created danger, described

above, of the non-family run conservatorship, (iii) refused to make permanent her son's appointments as "temporary" conservator, (iv) increased expenditures from her Trust assets, (v) threatened removal of her children's access to providing companionship to her and removal of their substantial assistance in providing superior care for her; and (vi) threatened return to the neglected care and attempted passive euthanasia to hasten her death.

156.    Defendants and the state courts also retaliated against Plaintiff as described above in Paragraphs 68 through 73 to block access to the state court for these civil claims, by not making Michael Dubro's "temporary" conservatorship appointments into permanent appointments, even though it has been admitted he should be Plaintiff's conservator and he has been "temporary" for more than twenty months, all designed to preclude standing in state court where next-friend standing has not been adopted.

157.    Plaintiff's opposition to violations of the ADA in the public services context, through petitioning the probate court and/or filing of civil claims in state court, was a substantial or motivating factor of the Defendants' described retaliatory discrimination in violation of the ADA, Title IV.

158.    Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the written filings and outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights and safety as Defendants threatened to again allow her to be stripped of all her rights, liberties and property without legal counsel zealously advocating for her and refused or otherwise failed to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their conduct violated Plaintiff's rights under federal law; and/or

(iii) Defendants, and each of their, conduct oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority Defendants were given only to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself.

159.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages and costs including attorneys' fees, according to proof at trial, based on the harms caused by these Defendants, and each of their, conduct resulting in violations of the anti-discrimination provisions of ADA, Title IV through retaliation for opposing violations of the ADA, Title II prohibitions of disability discrimination in public services/access to the courts.

## NINTH CLAIM

Cal. Welf. & Inst. Code § 15610.07, subd. (a) & (b) – Elder Abuse for Monetary Gain

[Against All Named Defendants and DOES 1-50]

160.    Plaintiff realleges and incorporates Paragraphs 1 through 159, as though set forth herein.

161.    Under California Welfare & Institutions Code, Section 15610.07, subd. (a) and (b), Plaintiff asserts violations of California's Elder Abuse statutes, which were undertaken for monetary gain by Defendant Dennis Dubro to exert control over Plaintiff's Trust and Trust assets and also to hasten Plaintiff's demise, so he could immediately take twenty percent (20%) of the value of her Trust as a successor beneficiary; and all other Defendants violated the Elder Abuse statutes for monetary gain through payments to them from Plaintiff's Trust assets.

162.    Defendants Dennis Dubro, Mark Cederborg, George McNitt, Kristen Boney, Legal Assistance for Seniors, Leo Bautista, Kellie Hayes, Daniel Leahy, Douglas Housman, Dr. Curran, Dr. Dhanak, Sharon Baldoza, DOES 1-50 and each of them, conspired to and did directly violate the Elder Abuse statutes.

163.    Defendants Mark Cederborg, Leo Bautista, Kellie Hayes, Douglas Housman, LivHOME, L and C, ElderConsult, Dr. Dhanak, Dr. Curran, Guided HealthCare, Vitas, Ace Home Health & Hospice, Inc. and Does 1-50 are "Supervisorial Defendants" whose subordinates' direct actions or failures to act participated in the abuses and violations of due process as discussed above in Paragraph 95, and these Supervisorial Defendants each participated in the abuses of Plaintiff's person and finances, including the attempted passive euthanasia and siphoning off in excess of $2.5 Million from her Trust.

**Section 15610.07(a)**

164.    Defendant Dennis Dubro conspired with and/or otherwise directed Defendants Leo Bautista, Kellie Hayes, L and C Care Providers, LivHOME, Vitas, Ace Home Health & Hospice, Inc,

Guided Healthcare, Sharon Baldoza, Dr. Curran, Dr. Dhanak and DOES 1-50, who had a substantial caretaking or custodial relationship with Plaintiff involving ongoing responsibility for her basic needs, which able-bodied, fully competent adults would ordinarily be capable of managing without assistance.

165.    Plaintiff was 89 to 94 years old while she was in These Defendants' care or custody.

166.    Defendant Dennis Dubro conspired with and/or directed each of these Defendants causing them to fail to use the degree of care that a reasonable person in their same situation would have used in providing for Plaintiff's basic needs, including (i) preventing malnutrition or dehydration, and (ii) avoiding unnecessary use of powerful mood-altering and mind-altering drugs as a chemical restraint, (iii) addressing the unchecked growth of an unsightly and unhealthy cyst that should have been removed, (iv) diagnosing a cancer that was allowed to grow unchecked to a size that created a substantial, unnecessary risk of metastasis, (v) providing physical activity, (vi) allowing her use of restroom facilities instead of being forced to use diapers, (vii) not isolating her from her family, and (viii) allowing her to go on outings or excursions, (ix) allowing her to have visits with family members, and (x) protection of her rights, providing for her physical and psychosocial needs.

167.    Each of these Defendants also took, hid, appropriated, obtained or retained and/or assisted in taking, hiding, appropriating, obtaining or retaining Plaintiff's property for a wrongful use or with the intent to defraud or by undue influence; and Defendant Dennis Dubro conspired with and/or otherwise directed such improper conduct.

168.    Each of these Defendants, through their conspiracy, engaged in fraud through an intentional misrepresentation, deceit, or concealment of a material fact with the intention of depriving Plaintiff of her rights and/or property or otherwise to cause Plaintiff injury as discussed above.

169.    Defendants', and each of their, conduct caused Plaintiff to suffer harms, including deprivation of her rights, being house bound and bed-bound, isolation from her family, drugging as a means of chemical restraint, deprivation of nutrition and being left to waste away, negligent care of her cyst to grow unchecked with an undiagnosed cancer that created an unconscionable risk of metastasis to other parts of Plaintiff's body, in addition to other physical, financial and psychosocial abuses.

170.    Each Defendants' conduct was a substantial factor in causing Plaintiff's harms.

/ / /

**Section 15610.07(b)**

171.    These Defendants, and each of them, acted with recklessness, oppression, fraud and/or malice in neglecting Plaintiff and did so pursuant to the conspiracy led by Defendant Dennis Dubro and/or as otherwise directed by Defendant Dennis Dubro.

172.    These Defendants, and each of them, were grossly negligent as they knew it was highly probable that their conduct would cause harm and knowingly disregarded this risk.

173.    These Defendants', and each of their, conduct was despicable and/or was done with a willful and knowing disregard of the rights or safety of another.

174.    These Defendants, and each of them, was/were aware of the probable dangerous consequences of their conduct, including that Plaintiff was being left to waste away through lack of proper nutrition and dehydration, and was likely to suffer harms up to and including premature death, and deliberately failed to take actions to avoid those consequences.

175.    These Defendants', and each of their, conduct was so vile, base, or contemptible that it would be looked down on and despised by reasonable people and/or was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of her rights.

176.    Each Defendant's conduct described above that violated Section 15610.07(a) and/or Section 15610.07(b) was a substantial factor in causing Plaintiff's harms or injuries.

177.    Plaintiff seeks recovery of damages, including economic and non-economic damages (and double damages as allowed by Welf. & Inst. Code § 15657) and punitive damages and costs including attorneys' fees, according to proof at trial.

178.    Plaintiff also seeks application of California Probate Code § 259, to deem Defendant Dennis Dubro to have predeceased Plaintiff, due to the abuses of Plaintiff's person and finances at his direction that was designed to cause Plaintiff's death through passive euthanasia so he could immediately take 20% of the Trust assets, which scheme would have killed Plaintiff had Michael Dubro not been appointed as Plaintiff's "temporary" conservator and saved her life, and supported as follows:

        (i)    Defendant Dennis Dubro caused physical abuse, neglect and financial abuse, as set forth above, to Plaintiff, who is an elder and/or dependent adult;

        (ii)    Defendant Dennis Dubro acted in bad faith to cause abuse of Plaintiff, his mother;

(iii)    Defendant Dennis Dubro was reckless, oppressive, fraudulent and/or malicious in causing these abuses to Plaintiff's person and/or finances; and

(iv)    Plaintiff has been unable to manage her financial resources to resist fraud or undue influence at all relevant times up to and including before she passes away.

**TENTH CLAIM**

Breach of Fiduciary Duties

[Against All Named Defendants and DOES 1-50]

179.    Plaintiff realleges and incorporates Paragraphs 1 through 178, as though set forth herein.

180.    Defendants Kristen Boney, Legal Assistance for Seniors ("LAS") and George McNitt owed fiduciary duties to Plaintiff as her attorneys.

181.    Defendants Leo Bautista, Kellie Hayes, and Daniel Leahy owed fiduciary duties to Plaintiff as appointed conservators and/or interim trustees for her 2013 Dubro Family Trust.

182.    Defendant Mark Cederborg owed fiduciary duties to Plaintiff as her limited scope guardian ad litem and by holding himself out as a general scope guardian ad litem for both the conservatorship and for the trust matter, whether with or without actual or proper appointment.

183.    Defendants Dr. Curran, Dr. Dhanak, ElderConsult, Sharon Baldoza, Guided HealthCare, Vitas, Ace Home Health & Hospice, Inc., L and C Care Providers, LivHOME and DOES 1-50 owed fiduciary duties to Plaintiff as medical care providers/home care providers.

184.    Defendant Dennis Dubro owed fiduciary duties to Plaintiff, as her son, who held himself out as her agent for financial and health care decisions, even though Plaintiff expressly did not want for him to be involved with her care or finances.

185.    Defendants, and each of them, who owed fiduciary duties to Plaintiff, breached those fiduciary duties by not acting with the utmost good faith in the best interests of Plaintiff, to whom the fiduciary duties were owed, and/or failed to act as a reasonably careful fiduciary would have acted under the same or similar circumstances.

186.    Defendants, and each of them, knew about the other Defendants' fiduciary duties owed to Plaintiff and provided substantial assistance or encouragement to one or more Defendant(s) (civil aiding and abetting or civil conspiracy) to breach their fiduciary duties owed to Plaintiff.

187.    By breaching and/or assisting or encouraging others to breach fiduciary duties owed to Plaintiff, Defendants and each of them caused or allowed all of the deprivation of rights, violations of federal rights, retaliatory discrimination, false imprisonment, elder abuse and consequent physical, psychosocial and financial harms set forth above in the First Claim through Ninth Claim, inclusive.

188.    Each Defendant's conduct was a substantial factor in causing the harms to Plaintiff.

189.    Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights as follows:

(i) the conduct was malicious as it was accompanied by ill will or spite and with the purpose of injuring Plaintiff, as admitted by Defendant Dennis Dubro in describing his conspiracy and also as inferred by the written filings and outrageousness of the conduct involved;

(ii) the conduct was in reckless disregard of Plaintiff's rights, under the circumstances, and reflects complete indifference to Plaintiff's rights and safety as Defendants threatened to again allow her to be stripped of all her rights, liberties and property without legal counsel zealously advocating for her and refused or otherwise failed to step in and stop the violence to her rights and person when the numerous abuses of her person and finances were brought to their attention; and, the conduct continued after Defendants were made aware that their conduct violated Plaintiff's rights under federal law; and/or

(iii) Defendants, and each of their, conduct oppressively injured, damaged and/or violated Plaintiff's rights with unnecessary harshness or severity, including through misuse or abuse of the authority Defendants were given only to be used to protect Plaintiff's rights, property and person and/or by Defendants' taking advantage of Plaintiff's dementia and inability to advocate for herself.

190.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages, according to proof at trial, based on the harms caused by these Defendants, and each of their, conduct resulting in violations of their fiduciary duties owed to Plaintiff.

## **ELEVENTH CLAIM**

Professional Negligence/Negligence

[Against All Named Defendants and DOES 1-50]

191.    Plaintiff realleges and incorporates Paragraphs 1 through 190, as though set forth herein.

192.    Plaintiff was harmed by Defendants, and each of their, professional negligence, including by way of the fraudulent conspiracy described above.

193.    Each of these Defendants was negligent in providing professional services as a fiduciary as described in the Tenth Claim, above.

194.    Plaintiff was harmed as a result of these Defendants', and each of their, professional negligence resulting in deprivation of her rights, false imprisonment by being house bound and bed-bound, isolation from her family, drugging as a means of chemical restraint, improper placement on hospice care for almost twenty (20) months, deprivation of nutrition and being left to waste away without proper nutrition and/or medical intervention, negligent care allowing an unsightly and unhealthy cyst to grow unchecked with undiagnosed cancer that created substantial risk of metastasis to other parts of Katherine's body, improperly taking over her 2013 Dubro Family Trust in violation of the expressly designated trustee provisions designating two of her children as trustee and successor trustee and then siphoning off in excess of Two Million Five Hundred Thousand Dollars ($2,500,000) of trust value while refusing to provide complete accountings, and other physical, financial and psychosocial abuses.

195.    These Defendants', and each of their, professional negligence or negligence was a substantial factor in causing Plaintiff 's harms.

196.    Plaintiff seeks recovery of damages, including economic, non-economic and punitive damages, according to proof at trial, based on the harms caused by these Defendants, and each of their, negligent or professionally negligent conduct.

## TWELFTH CLAIM

Cal. Business & Professions Code § 17200 – Unfair Business Practices

[Against Defendants Mark Cederborg, Legal Assistance for Seniors, Kristen Boney and George McNitt]

197.    Plaintiff realleges and incorporates Paragraphs 1 through 196, as though set forth herein.

198.    Under California Business & Professions Code, Section 17200, Plaintiff asserts violations of California's unfair business practices statute against Defendants Mark Cederborg, Legal Assistance for Seniors, Kristen Boney and George McNitt.

199.    Defendant Mark Cederborg engaged in unfair and/or fraudulent business practices including but not necessarily limited to the following:

(i)      he previously advertised on his website, at the time of the stipulation that appointed him as a limited scope guardian ad litem, that he had thirty (30) years of probate litigation experience; but when his conduct as purported guardian ad litem was challenged, he hired his own attorney and forced Plaintiff to pay from her Trust assets for that attorney, by arguing to the court that he hadn't engaged in litigation for decades and, therefore, could not handle the probate litigation himself;

(ii)     he twice had petitions made to the court to be appointed as guardian ad litem for the trust matter involving Plaintiff's Trust, but the court denied both petitions; however, he continued to hold himself out and act as though he had been appointed as guardian ad litem for the Trust matter and received payment from Plaintiff's Trust assets for such involvement in the Trust matter;

(iii)    he participated in the fraudulent conspiracy to deprive Plaintiff of her civil rights, as described above, including purporting to waive her jury trial when the court stated, "I need a jury trial waiver. Somebody has to do it," which was instrumental in the deprivation of her rights, even though he knew or should have known that only Plaintiff or her attorney could validly waive her jury trial right.

200.    Defendants Legal Assistance for Seniors, Kristen Boney and George McNitt engaged in unfair, deceptive and/or unlawful business practices, including but not limited to the following:

(i)      unethical violation of California Rules of Professional Conduct, rule 8.1 by permitting what they knew or should have known was discriminatory conduct towards Plaintiff by not providing her the same level of advocacy guaranteed to every litigant who does not have dementia; namely, zealous advocacy for the client's rights and expressed wishes – These Defendants failed to vigorously advocate on Plaintiff's behalf solely because of her known disability choosing instead to appease the court and/or the co-conspirators, as set forth above, and also failed to advocate for corrective action, as mandated by Rule 8.4.1, to restore Plaintiff's rights that were taken from her based on discrimination due to her known disability of dementia, and did so to garner fees from Plaintiff and from other conservatees through court appointments as counsel for conservatees or proposed conservatees with dementia or similar cognitive disabilities, which results "undermines confidence in the legal system and legal profession and is also contrary to fundamental principles of equality and fairness";

(ii)     unethical violation of California Rules of Professional Conduct, rule 8.4 by assisting and/or inducing others to violate Rule 8.4.1, and/or violating Rule 8.4.1 through the acts of others, as

discussed in Paragraph 200(i), above, and by leaving Plaintiff without counsel at trial and for two years of operation of the illegitimate conservatorship to the extreme detriment of Plaintiff, their client, who has been left in an invalidly created conservatorship she didn't want; led by private fiduciaries instead of family for almost three years, in direct contravention of her known wishes; resulting in more than $2 Million being siphoned from her assets through expenses she expressly wanted to avoid; and, she was subjected to isolation, drugging, extreme neglect, dehydration, malnutrition and attempted passive euthanasia, among other abuses, for which negligent and abusive treatment she has been forced to pay;

(iii)    unethical violation of California Rules of Professional Conduct, rule 1.1 by intentionally, recklessly, or repeatedly failing to perform legal services with competence to zealously represent Plaintiff while receiving payment from Plaintiff as her court-appointed counsel; and/or

(iv)    unethical violation of the duty of loyalty owed to Plaintiff (*See Flatt v. Superior Court*, 9 Cal.4th 275, 286 (1994)) by dishonestly or fraudulently putting themselves in a position where they were required to choose between conflicting duties to the court, or attempting to reconcile conflicting interests or trying to garner more fees through future appointments, rather than enforcing to their full extent the rights of Plaintiff. (*See Anderson v. Eaton*, 211 Cal. 113, 116 (1931).) An attorney's duty of loyalty prohibits putting another's interests above that of the client, but Defendants violated this Duty of Loyalty by not prioritizing Plaintiff's rights and wishes above their own self-interest and the interests of others. They clearly violated Rule 1.1. when they attempted to avoid personal liability and liability for other tortfeasors who abused Plaintiff's rights, finances, and person, by (a) withdrawing as counsel and leaving Plaintiff without counsel at trial, (b) artificially limiting the level of advocacy provided to Plaintiff to appease the court and the co-conspirators, (c) refusing to advocate to protect Plaintiff's rights or to restore her rights, and/or (d) requesting unlawful retaliation against their own client for pursuit of rightful claims on her behalf, as described above, including in Paragraph 155; and

(v)    Defendants Kristen Boney and Legal Assistance for Seniors ("LAS") unethically assumed representation as legal counsel for Plaintiff, and accepted payment from her Trust assets, notwithstanding the undisclosed conflicts of interest that should have disqualified them as counsel, including (a) Defendant Boney having a close relationship with opposing counsel who was trying to take away Plaintiff's rights, liberties and property; (b) LAS receiving substantial financial contributions from

the opposing firm that was trying to take away Plaintiff's rights, liberties and property; (c) LAS' CEO and President of its Board of Directors being a named partner at the opposing firm that was trying to take away Plaintiff's rights, liberties and property; (d) the trial court forcing all conservatees or proposed conservatees who are not developmentally disabled and can afford to pay for an attorney, to accept and pay LAS as their court appointed counsel, through an improper monopolistic mandate set forth in Alameda County Superior Court Local Rule 7.820 that failed to disqualify LAS for conflicts of interest with their client, Plaintiff; and, (e) in this case, where the court removed the counsel Plaintiff had already retained, to be replaced by LAS who then failed to provide zealous advocacy for the client, Plaintiff who was paying for their fees, and instead withdrew as counsel before trial to leave Plaintiff without an attorney to represent her and where the court then conducted an invalid trial without fulfilling the jurisdictional prerequisites of Probate Code Section 1825 after accepting an invalid jury trial waiver, clearing the road for him to then issue orders forcing Plaintiff into conservatorship without Plaintiff or her attorney present to protect her rights, liberties and property.

201.    These Defendants violations of Section 17200 were a substantial factor in causing the harms suffered by Plaintiff, including economic losses for forced payment of fees for services promised or required but that were not provided and for other damages that necessarily resulted from their failure and/or refusal to provide the level and type of services advertised (e.g., Defendant Cederborg hiring another expensive litigator with Plaintiff's money claiming he could not litigate and hadn't litigated for decades; and Defendants LAS, Boney and McNitt for not providing the zealous advocacy required by the duties of ethics and professional responsibility – and providing less to persons with the known disability of dementia would be *per se* unlawful disability discrimination; and through Defendant LAS having an inappropriate monopolistic relationship with the court).

202.    Plaintiff seeks restitution damages, according to proof at the time of trial, as a result of These Defendants' violations of Section 17200.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants as follows:

1.    Economic damages (special damages);

2.    Non-economic damages (emotional distress, pain and suffering, violations of rights, etc.);

-45-

3.      Double compensatory damages for bad faith elder abuse;

4.      Restitution damages for violations of Section 17200;

5.      Exemplary damages;

6.      Prejudgment and post-judgment interest;

7.      Attorneys' fees, expert fees and all costs of litigation, pursuant to 42 U.S.C. § 1988; 42 U.S.C. § 12205; and/or California Code of Civil Procedure § 1021.5

8.      Costs of suit;

9.      Deeming Defendant Dennis Dubro to have predeceased Plaintiff (Prob. Code § 259); and,

10.     Such other relief as the Court deems just and proper.

Dated: May 19, 2022                                      Respectfully submitted,

                                                         LAW OFFICE OF EVAN C. NELSON

                                                         By:_____
                                                                 EVAN C. NELSON
                                                         Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby makes demand for a jury trial as guaranteed by the Seventh Amendment to the United States Constitution and California Constitution, Article 1, Section 16.

Dated: May 19, 2022                                      Respectfully submitted,

                                                         LAW OFFICE OF EVAN C. NELSON

                                                         By:_____
                                                                 EVAN C. NELSON
                                                         Attorney for Plaintiff

EXHIBIT A

1  EVAN C. NELSON (SBN 172957)
   LAW OFFICE OF EVAN C. NELSON
2  1261 LOCUST STREET, #191
   WALNUT CREEK, CA 94596
3  (925) 247-8992
   EMAIL: EVANCNELSON.LAW@GMAIL.COM
4
   ATTORNEY FOR
5  MICHAEL DUBRO AS TEMPORARY CONSERVATOR OF THE
   PERSON AND ESTATE OF KATHERINE M. DUBRO
6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF ALAMEDA

10

11  IN RE: Conservatorship of the Person and Estate of    )    **Case No: HP11595568**
                                                          )
12  KATHERINE M. DUBRO                                    )    **DECLARATION OF SANDRA C.**
                                                          )    **WONG, D.O. CONCERNING THE**
13                                                        )    **CONSERVATORSHIP OF**
                                                          )    **KATHERINE M. DUBRO**
14                                                        )
                                                          )
15  _____   )

16  I, SANDRA C. WONG, D.O., declare as follows:

17      1.      I have personal knowledge of the facts set forth herein and, if called and sworn as a witness,

18  I could and would testify competently to the following matters.

19      2.      I am a licensed physician, having completed both my residency and internship with the

20  University of Southern California, California Hospital Medical Center after earning a Doctor of

21  Osteopathic Medicine from Western University of Health Sciences, California.

22      3.      I am board certified in Family Medicine and am affiliated with Sutter Medical Network

23  and Palo Alto Medical Foundation – Palo Alto Foundation Medical Group.

24      4.      As of mid-August 2020, I have been the primary care physician for Katherine M. Dubro

25  ("Katherine"), a 93-year old patient who has dementia (likely Alzheimer type) without behavioral

26  disturbance.

27      5.      It is my opinion, based on my observations and to a reasonable degree of medical and

28  scientific certainty, that close and consistent involvement of Katherine's children in her life, to provide

-1-

DECLARATION OF SANDRA C. WONG, D.O. CONCERNING THE CONSERVATORSHIP OF KATHERINE M. DUBRO

both companionship and care, is essential in stabilizing Katherine's mood, health and life. To that end, I strongly recommend that Katherine's son, Michael Dubro, continue as her conservator and not be replaced by a non-family, private fiduciary as such would be detrimental to Katherine's well-being.

6.      When Katherine was first brought to me for medical care, after Michael Dubro took over the conservatorship from a private, third-party conservator, she weighed only 97 pounds and had a large cyst on her neck that was bleeding and oozing, and Katherine would grab and pull at the cyst. It is my medical opinion that prior neglect of these unhealthy conditions, by the non-family conservators, should not have been allowed and that such neglect posed a serious risk to Katherine's health and life.

7.      Within a few weeks of proper attention to Katherine's diet and weight, under Michael Dubro's acting as her conservator, Katherine gained enough weight to prevent what otherwise would have most likely resulted in her imminent death, had the weight loss and other neglect existing under the care provided by the former private, non-family conservators been allowed to continue.

8.      The large cyst was also removed within weeks of Michael Dubro's acting as conservator for his mother. Unfortunately, the private, non-family conservators had allowed the cyst on Katherine's neck to grow, unchecked, and it had become very large and cancerous. The prior conservators, and the doctors and caregivers hired by them, had allowed the cyst to grow to an unhealthy size and the cancer in the cyst had grown so large that it created a substantial risk of metastasis. In fact, serious neglect under the prior conservators' care appears to have left the cancer undiagnosed. Fortunately, Michael Dubro replaced the prior conservators and the cyst was immediately removed by a dermatologist, at both my and the dermatologist's direction.

9.      However, because the cancer in the large cyst went undiagnosed under the care provided by the prior conservators, the cancer grew so large that a significant risk of cancer metastasis remains for Katherine, even though the primary tumor has now been removed.

10.      It is my opinion, to a reasonable degree of medical certainty, that Katherine's son, Michael Dubro, has done a remarkable job restoring Katherine's health after the abuses that occurred under the prior conservators, and he may very well have extended her life by years.

11.      It is further my opinion, to a reasonable degree of medical certainty, in stark contrast to the prior abuses at the hands of non-family conservators, Michael Dubro has done a superb job caring for his

1 mother. Indeed, Michael Dubro has done a remarkable job, far superior to that performed by the prior

2 conservators, and factoring in all aspects of Katherine's physical, emotional and psychosocial needs, it is

3 my opinion that Michael Dubro should remain as conservator for his mother, Katherine M. Dubro.

4 Moreover, under no circumstances should Katherine be returned to the abuses of a non-family conservator.

5    12.    Each and all of my opinions expressed above are stated to a reasonable degree of medical

6 and scientific certainty based on my knowledge, experience and training, personal observations,

7 examinations and treatment of Katherine M. Dubro.

8    I declare under penalty of perjury under the laws of the State of California that the foregoing is

9 true and correct and is executed on April _30_, 2021 in Fremont, California.

10

11

12    By: _____ D.O.
            SANDRA C. WONG, D.O.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SANDRA C. WONG, D.O. CONCERNING THE CONSERVATORSHIP OF KATHERINE M. DUBRO